UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

         v.

DAVID PIRK, ANDRE JENKINS, a/k/a
Little Bear, TIMOTHY ENIX a/k/a Blaze,
FILIP CARUSO a/k/a Filly, EDGAR DEKAY, II
a/k/a Ed a/k/a Special Ed, JASON WILLIAMS
a/k/a Toop, THOMAS KOSZUTA a/k/a
Kazoo, GREGORY WILLSON a/k/a Flip,
EMMETT GREEN, ROBERT OSBORNE, JR.,
STANLEY OLEJNICZAK, JACK WOOD a/k/a
Jake a/k/a Snake, RYAN MYRTLE,
GLEN STACHARCZYCK a/k/a Turbo,
SEAN MCINDOO a/k/a Professor,

               Defendants,

THOMAS SCANLON a/k/a Tom,

               Defendant-Movant.

_____

**DECISION AND ORDER**

1:15-CR-00142 EAW

Presently before the Court is the motion (Dkt. 385) of defendant Thomas Scanlon ("Scanlon") to dismiss Counts 28, 29, and 30 of the Second Superseding Indictment returned on March 16, 2016 (Dkt. 33), alleging various crimes in connection with the operation of the Kingsmen Motorcycle Club ("KMC"). Scanlon also seeks a bill of particulars with respect to Counts 27 and 28.[1] (Dkt. 385). Because the Second

---

[1]      Scanlon's motions to dismiss Counts 28, 29, and 30, and for particularization of Counts 27 and 28, were filed as part of his omnibus pretrial motions on December 7, 2016. (Dkt. 385). The other relief Scanlon seeks in those omnibus motions has been or will be addressed in other Decisions and Orders from this Court and/or the Magistrate Judge. (*See, e.g.*, Dkt. 568; Dkt. 688).

Superseding Indictment adequately alleges the obstruction of justice and perjury charges that are the subject of Counts 28, 29 and 30, Scanlon's motion to dismiss is denied.  With respect to his requested particularization of Counts 27 and 28, the Court reserves decision and requests supplemental briefing in accordance with the schedule set forth below.

## **BACKGROUND**

Scanlon and 11 remaining co-defendants[2] are charged with various crimes in the 46-count Second Superseding Indictment ("Indictment"), including a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq*. ("RICO"), drug trafficking offenses, and firearms offenses.  (Dkt. 33).  As relevant to this Decision and Order, the Indictment includes two counts against Scanlon charging Obstruction of Justice in violation of 18 U.S.C. § 1503 (Counts 27 and 28), and two counts against Scanlon charging perjury in connection with alleged false statements before the grand jury in violation of 18 U.S.C. § 1623(c) (Counts 29 and 30).

After Scanlon filed the instant motion on December 7, 2016 (Dkt. 385), the Government filed a response on January 10, 2017 (Dkt. 437), and Scanlon filed a reply on February 24, 2017, (Dkt. 509).  Oral argument was held before the undersigned on May 9, 2017, at which time the Court reserved decision.  (Dkt. 593).

---

[2]    Four Defendants—Edgar Dekay (Dkt. 412), Thomas Koszuta (Dkt. 296), Emmett Green (Dkt. 257), and Ryan Myrtle (Dkt. 330)—have pleaded guilty.

## DISCUSSION

### I.    Motion to Dismiss

Scanlon moves to dismiss Counts 28, 29, and 30 of the Indictment.  (Dkt. 385 at

14-21).  For the reasons set forth below, the Court denies Scanlon's motion.

### A.    Legal Standard

Federal Rule of Criminal Procedure 12(b) states that "[a] party may raise by

pretrial motion any defense, objection, or request that the court can determine without a

trial on the merits."  Fed. R. Crim. P. 12(b)(1).  "The general issue in a criminal trial is, of

course, whether the defendant is guilty of the offense charged."  *United States v. Doe*, 63

F.3d 121, 125 (2d Cir. 1995).  A pre-trial motion to dismiss an indictment under Rule 12

must satisfy a "high standard."  *United States v. Lazore*, 90 F. Supp. 2d 202, 203

(N.D.N.Y. 2000).  "In deciding a motion to dismiss an indictment for failure to state a

criminal offense, a court must assume the truth of the allegations in the indictment and

determine whether the indictment is valid on its face."  *United States v. Larson*, No. 07-

CR-304S, 2011 WL 6029985, at *1 (W.D.N.Y. Dec. 5, 2011) (citing *United States v.*

*Bicoastal Corp.*, 819 F. Supp. 156, 158 (N.D.N.Y. 1993)).  This Court may not "look

beyond the face of the indictment and draw inferences as to the proof that would be

introduced by the government at trial."  *Id.* (quoting *United States v. Alfonso*, 143 F.3d

772, 776 (2d Cir. 1998)) (alterations omitted).

Federal Rule of Criminal Procedure 7(c) requires that an indictment "must be a

plain, concise, and definite written statement of the essential facts constituting the offense

charged. . . ."  Fed. R. Crim. P. 7(c)(1).  An indictment is "sufficient if it, first, contains

the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Alfonso*, 143 F.3d at 776; *see also United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) ("An indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events."). The indictment "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Alfonso*, 143 F.3d at 776.

### B.    Count 28

Scanlon argues that Count 28 must be dismissed "[t]o the extent that this Count relies on false statements allegedly made to an FBI agent, as distinct from any statements made to the grand jury. . . ." (Dkt. 385 at 19-21). According to Scanlon, the "nexus" requirement—that is, the requirement that the alleged unlawful act have a "relationship in time, causation, or logic" to the interfered-with judicial proceeding—must be alleged in the indictment and is lacking here because, at least to some extent, the count alleges that Scanlon impeded only an FBI investigation. (*Id.*). The Government responds that all of Scanlon's "statements, to either the FBI or to the Grand Jury, were made while the defendant was on actual notice of such judicial proceedings by virtue of the fact that he was served a Grand Jury subpoena, and then testified before the Grand Jury pursuant to such subpoena." (Dkt. 437 at 12-13).

Count 28 charges Scanlon with a violation of 18 U.S.C. § 1503 as follows:

Between on or about July 15, 2015, and on or about September 16, 2015, in the Western District of New York, . . . THOMAS SCANLON . . . did corruptly influence, obstruct and impede, and endeavor to influence, obstruct and impede the due administration of justice *in investigations being conducted by a Grand Jury and the Federal Bureau of Investigation* in the Western District of New York, by testifying falsely and evasively regarding (i) his knowledge of the Kingsmen Motorcycle Club; (ii) his relationship with David Pirk; (iii) the amount of communication he had and maintained with David Pirk; (iv) his telephone contact with David Pirk on September 6, 2014; (v) his meeting with David Pirk on September 6, 2014, in Delevan, New York; (vi) the role of the Kingsmen Nomads; (vii) his knowledge of the shutdown of the Springville Chapter Kingsmen clubhouse on June 7, 2013; (viii) the assault of Victim B, a person known to the Grand Jury and robbery at the Springville Chapter Kingsmen clubhouse on June 7, 2013; (ix) the purpose and substance of his meeting with the Outlaws in Olean, New York, in the summer of 2014; and (x) his role in the Kingsmen Motorcycle Club.

(Dkt. 33 at 49 (emphasis added)). Section 1503 contains three elements:

(1) that there is a pending judicial or grand jury proceeding constituting the administration of justice, (2) that the defendant knew or had notice of the proceeding, and (3) that the defendant acted with the wrongful intent or improper purpose to influence the judicial or grand jury proceeding, whether or not the defendant is successful in doing so—that is, that the defendant corruptly intended to impede the administration of that judicial proceeding.

*United States v. Quattrone*, 441 F.3d 153, 170 (2d Cir. 2006) (quotation omitted).

The Supreme Court has "expressly emboss[ed] a nexus limitation on the statute." *Id.* (citing *United States v. Aguilar*, 515 U.S. 593, 599-600 (1995)). "The nexus limitation is best understood as an articulation of the proof of wrongful intent that will satisfy the *mens rea* requirement of 'corruptly' obstructing or endeavoring to obstruct." *Id.* Thus, the Government must prove "a connection between the defendant's intentional acts and the likelihood of potentially affecting the administration of justice" in order to sustain its burden on the "corruptly" prong. *Id.*

Applying this rule in *Aguilar*, the Supreme Court reversed the conviction of a federal district judge for obstruction of justice under § 1503, arising out of false statements made by the judge to FBI agents during the course of a grand jury investigation. The case went to a jury trial. *Aguilar*, 515 U.S. at 595. The Supreme Court found no proof that the agents acted as an arm of the grand jury, and the agent had "not been subpoeñaed or otherwise directed to appear before the grand jury." *Id.* at 601.

> [W]hat use will be made of false testimony given to an investigating agent who has not been subpoenaed or otherwise directed to appear before the grand jury is far more speculative. We think it cannot be said to have the 'natural and probable effect' of interfering with the due administration of justice.

*Id.* Thus, *Aguilar* holds that if a defendant does not have knowledge that his actions will likely affect a pending judicial or grand jury proceeding, he lacks the requisite intent to obstruct. *See id.*

Following *Aguilar*, the Second Circuit in *United States v. Schwarz*, 283 F.3d 76 (2d Cir. 2002), reversed a conviction for conspiracy to violate § 1503 because the Government had not shown that the defendant knew that the false statements he made to federal investigators would be conveyed to the grand jury. *Id.* at 109. The Second Circuit reasoned:

> He may have hoped that they would be provided to the grand jury, and surely there was that possibility; but there was insufficient evidence to "enable a rational trier of fact to conclude that [Bruder] knew" that this would happen or that he entertained any expectations on that score that were based on such knowledge. At best, the government proved that Bruder, knowing of the existence of a federal grand jury investigation, lied to federal investigators regarding issues pertinent to the grand jury's investigation.

*Id.* Like *Aguilar*, *Schwarz* was an appeal following a jury trial. *Id.* at 79.

In *United States v. Genao*, 343 F.3d 578 (2d Cir. 2003), the Second Circuit held that the indictment did not set forth a sufficient nexus between the defendant's false statements and a federal judicial proceeding where "[t]he indictment itself makes no mention of any grand jury or other judicial proceeding." *Id.* at 585. The Second Circuit additionally reasoned that "even if [it was] able to consider conduct not specifically alleged in the indictment, the Government's argument would fail" because, given that the defendant "agreed to waive his speedy trial rights so that the Government could postpone filing an indictment until after his innocence proffers," the defendant was "therefore aware at the time he made the relevant false statements that the Government had not yet convened a grand jury to investigate his arrest for money laundering." *Id.* In that case, the defendant was convicted following a guilty plea. *Id.* at 579.

At least one district court within this Circuit has held that the nexus requirement is not an element of § 1503 that must be alleged in the indictment, but rather must only be proved at trial. *United States v. Triumph Capital Grp., Inc.*, 260 F. Supp. 2d 470, 475 (D. Conn. 2003). The court reasoned that the defendant's argument to the contrary "conflates pleading with proof":

> Neither *Aguilar* nor *Schwarz* involved the sufficiency of the indictment—
> the issue in both cases was the sufficiency of the evidence. In both cases
> the possibility or hope that the defendant's conduct would influence the
> grand jury was not sufficient to prove that the defendant knew or
> entertained any expectation that his conduct would influence it. But neither
> case held that the nexus requirement . . . is an element of § 1503 that must
> be alleged in the indictment. To the contrary, as the government contends,
> the nexus requirement must only be proved at trial.

*Id.* Therefore, because the indictment sufficiently alleged the elements of § 1503, the indictment was sufficient. *Id.* "Whether the government can prove that [the defendant] knew his actions were likely to affect the grand jury will depend on the evidence at trial." *Id.* The *Triumph Capital* court therefore denied the motion to dismiss the § 1503 count as legally insufficient. *Id.*

Another district court within this Circuit is in agreement with the *Triumph Capital* court, having concluded that "nexus" need not be alleged in the indictment. *United States v. Tairod Nathan Webster Pugh*, No. 15-CR-116(NGG), 2015 WL 9450598, at *16 (E.D.N.Y. Dec. 21, 2015). In that case, the court distinguished *Aguilar*, which came on direct appeal of a jury verdict and was decided on the basis of a full evidentiary record, from a pretrial motion to dismiss, on which "the court must assume the prosecution's allegations will be proven at trial and draw all reasonable inferences from those allegations." *Id.*

This Court agrees with the *Triumph Capital* and *Pugh* courts that "nexus" need not be alleged in the indictment. Nexus is an issue of proof, rather than an issue of the sufficiency of the indictment. It may reasonably be inferred that Scanlon knew that his statements would be conveyed to the grand jury based on the Indictment's allegation that Scanlon "did corruptly influence, obstruct and impede . . . the due administration of justice in investigations being conducted *by a Grand Jury* and the Federal Bureau of Investigation . . . by testifying falsely and evasively" about various matters involving the KMC. (Dkt. 33 at 49 (emphasis added)). *Genao* does not compel a different outcome; in that case, the indictment made no mention at all of a grand jury proceeding. 343 F.3d at

585. By contrast, the grand jury proceeding is specifically mentioned in the Indictment in this case. (Dkt. 33 at 49). Accordingly, Count 28 is legally sufficient, and Scanlon's motion to dismiss is denied.

### C.    Counts 29 and 30

Scanlon also moves to dismiss Counts 29 and 30 of the Indictment. Both of those counts charge Scanlon with making false statements before the grand jury, in violation of 18 U.S.C. § 1623(c). (Dkt. 33 at 50-55).

> The essential elements of making a false declaration before a grand jury are: (1) the defendant, while under oath, made one or more false declarations or answers as to matters about which he testified before a grand jury; (2) the defendant's testimony related to some material fact; and (3) the defendant knew the testimony was false.

*United States v. Catalano*, No. 92 CR. 1189 (LLS), 1994 WL 637748, at *3 (S.D.N.Y. Nov. 10, 1994).

### 1.    Count 29

Count 29 alleges that on July 15, 2015, Scanlon testified before the grand jury concerning a "material matter"—the issue of whether Scanlon had seen the KMC National President, defendant David Pirk ("Pirk"), at any time during the week after the murders of Maue and Szymanski on September 6, 2014—as follows:

Q:    Okay. Was there on September 6th again, those shootings were in the very early morning hours of September 6, 2014. Was there a party later that day?

A:    Where?

Q:    Out in Springville on California Road.

A:    Honestly, I don't know.

Q:      But you didn't attend any functions, any Kingsmen functions?

A:      That whole week I was home with my wife and my family.

(Dkt. 33 at 50-51). Count 29 then goes on to allege that two months later—on September 16, 2015—Scanlon testified before the grand jury as to that same material matter as follows:

Q:      Okay. How long had it been since you personally saw or met with Pirk to that time?

A:      I've seen him briefly.

Q:      At what point?

A:      It was at a party that took place in Delevan. He was in a vehicle leaving. I was coming to the party. That was the only time that I'd seen him.

Q:      This would have been after the murders, correct?

A:      Yes.

Q:      Later that same day, there was a party in Delevan?

A:      I don't know if it was the same day, but I know there was a party in Delevan. I don't know exactly. I want to say it was a Saturday maybe.

Q:      So the party is close in time to the murders, but after the murders, whether it was the same day or the next?

A:      Yes, it was a prescheduled party that was would have been taken place after the deaths of my brothers.
                                    ***
Q:      But you didn't stop and talk or anything like that?

A:      I think I shook his hand and he was saying he was leaving and that was really about it. It wasn't like, you know, he was in a vehicle.
                                    ***
Q:      Now, that party you attended later that evening, that was at Snake's house in Delevan?

- 10 -

A:    Yes.

Q:    And for a time his garage was sort of a makeshift clubhouse in Delevan?

A:    Temporarily. Yes.

Q:    And his house is on California Hill Road, correct?

A:    Yes.

(*Id.* at 51-52).

Scanlon argues that Count 29 should be dismissed because the allegedly false statements recounted above were not inconsistent and were a result of fundamentally ambiguous and unclear questioning. (Dkt. 385 at 14-19). According to Scanlon, he was "consistent in his testimony that he did not know if there was a party *in Springville on the date of the murders*, and that he attended a party *in Delevan sometime after* the murders." (*Id.* at 16). He further argues that any ambiguity in his answers is attributable to the questioner, who (1) "appears to reference two different parties: one in Springville and one in Delevan," (2) "references 'California Road' in Springville, New York, a place that does not exist," and (3) confused Scanlon regarding the timing of the party and manipulated his answer. (*Id.* at 17).

The Government takes a different view of the testimony, characterizing them as irreconcilable:

> [I]t is clear that on July 15, 2015, defendant Scanlon testified he did not see Pirk (or anyone else) after the murders because "[T]hat whole week I was home with my wife and my family," whereas on September 16, 2015, the defendant testified he saw Pirk and "shook his hand" at a party on California Hill Road on Saturday after the murders. These two statements on July 15, 2015, and September 16, 2015, are irreconcilable as one cannot both be "home with my wife and family" the "entire week" following the

murders, and also be at a party shaking hands with Pirk at on [sic] Saturday following the murders.

(Dkt. 437 at 8).

"When a line of questioning is so vague as to be 'fundamentally ambiguous,' the answers associated with the questions posed may be insufficient as a matter of law to support the perjury conviction." *United States v. Lighte*, 782 F.2d 367, 375 (2d Cir. 1986); *see also United States v. Jenkins*, 56 F. Supp. 3d 140, 146 (N.D.N.Y. 2014) ("[W]here a question is considered fundamentally ambiguous, the answers associated with the questions posed may be insufficient as a matter of law to support the perjury conviction." (quotations omitted)).

> A question is fundamentally ambiguous when it is not a phrase with a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony.

*Lighte*, 782 F.2d at 375 (quotation omitted). When ambiguity in questioning is raised, the "defense . . . may not be established by isolating a statement from context, giving it in this manner a meaning entirely different from that which it has when the testimony is considered as a whole." *Id.* (quoting *United States v. Bonacorsa*, 528 F.2d 1218, 1221 (2d Cir. 1976)).

"[A]bsent fundamental ambiguity . . . the question of what a defendant meant when he made his representation will normally be for the jury." *United States v. Wolfson*, 437 F.2d 862, 878 (2d Cir. 1970) (quoting *United States v. Diogo*, 320 F.2d 898, 907 (2d Cir. 1963)); *see also Jenkins*, 56 F. Supp. 3d at 146 ("[W]here there is an argument that the question is ambiguous, but it is not fundamentally ambiguous, a jury must resolve that

- 12 -

issue as to the defendant's understanding of the question."); *United States v. Serrano*, No. 86 Crim. 487 (WCC), 1986 WL 10488, at *4 (S.D.N.Y. Sept. 18, 1986) ("Since these two interpretations clearly pose a question of fact which must be resolved by the trier of fact—the jury—the motion to dismiss . . . is denied.").

The Court recognizes that the line of questioning at the grand jury appearance on July 15, 2015 was ambiguous, but on the present record, it cannot conclude that the questioning was *fundamentally* ambiguous. The question as to whether there was a party on September 6, 2014, is clear, but when Scanlon responded by asking the location of the party, the questioner created ambiguity by referencing the incorrect town (Springville versus Delevan). However, the follow-up question concerning whether Scanlon attended "any functions, any Kingsmen functions," *in context*, makes it clearer that the questioner was seeking to identify whether Scanlon had seen Pirk at any time in the week after the murders of Maue and Szymanski on September 6, 2014, whether at a party in Delevan or Springville, or any other event. *See Lighte*, 782 F.2d at 375 (stating that statements may not be isolated from their context when raising an ambiguity defense). The Court cannot conclude that the questioning turns on a phrase that is not one "with a meaning about which men of ordinary intellect could agree" or is not "one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony." *Id.* (quotation omitted). Accordingly, resolution of the question of what Scanlon meant in his testimony and what he understood that he was being asked must be left to the jury, and the motion to dismiss Count 29 is denied.

- 13 -

This is not to suggest that the Court believes the questions on July 15, 2015, were clear, or in the words of the Second Circuit, "while perhaps not fundamentally ambiguous, were at least most inartfully phrased." *Id.* at 376. If the questioner had wanted to probe Scanlon's attendance at this party where Pirk was in attendance, "more focused questions should have been asked." *Id.* (encouraging prosecutor on remand to withdraw from jury's consideration questions that were ambiguous, although not fundamentally ambiguous). On the other hand, Scanlon arguably was less than forthcoming when confronted with the question about his whereabouts on September 6, 2014, and if the Government persists with its pursuit of this charge, a jury will ultimately have to evaluate whether under the circumstances, Scanlon violated 18 U.S.C. § 1623(c).

## 2.    Count 30

Count 30 alleges that on July 15, 2015, Scanlon testified before the grand jury concerning a "material matter"—the issue of whether Scanlon had any information about the shutdown of the KMC Springville Chapter clubhouse on or about June 7, 2013—as follows:

> Q:    Now, in the summer of 2013 there was a chapter in Springville?
>
> A:    Yes. The chapter was from my understanding closed.
>
> Q:    Did you hear anything about the details of how the club was shut down? Was there any violence involved?
>
> A:    I don't know any details, I wasn't there.

(Dkt. 33 at 53-54). Count 30 then alleges that on September 16, 2015, Scanlon testified before the grand jury about that same material matter as follows:

Q:     I'd like to bounce back, and I apologize, but to the incident in Springville with Tirk (sic). We alluded to it last time. You're aware he had gotten beat up in Springville and essentially he was out of the club, correct?

A:     That's correct.

Q:     Now, regarding that incident I just want to follow-up, who told you about that occurring?

A:     Well, I can give you my side of things.

Q:     Were you there or did someone tell you? And we'll go from there.

A:     I showed up to Springville.

Q:     Okay, explain what happened?

A:     And then when I pulled up off the street, I seen that there were vehicles already there. I seen you know, it's about 150-200 feet, 200 feet from the actual road. So I pulled up and I seen people scattering around the property like ants, fire ants. I don't remember specifically the individuals there. I want to say that well, Springville was obviously there, and I seen the Springville insignia sign was taken off the building. I realized what the hell just happened that the chapter was essentially shutdown.

(*Id.* at 54).

Scanlon argues that his statements were made in response to two different inquiries:  first, whether he heard "anything about the details of how the club was shut down" and second, whether "any violence [was] involved."  Scanlon further argues that his statements were consistent:

Defendant Scanlon was not present at the actual shut-down of the Springville chapter and, therefore, could not provide "details," but viewed certain non-violent acts from the road, about 200 feet away.  And Defendant Scanlon could reasonably have interpreted the question about the "details" of the shutdown to be asking for more information than he had, given that he was not actually there.

- 15 -

(*Id.* at 18).

Once again, the Government takes a different view of Scanlon's testimony:

> [I]n the defendant's July 15, 2015, version, the defendant claimed he could not provide any details because **he was not there** (at the shutdown of the Springville Kingsmen Chapter June 7, 2013), whereas in the September 16, 2015, version he admitted he was there ("I showed up to Springville"). Both statements cannot be true, and any objective person viewing these answers knows the defendant's statements are irreconcilable.

(Dkt. 437 at 12).

The questioning that serves as the basis for the charge in Count 30 was not fundamentally ambiguous. In context, the questioner was seeking to identify any information that Scanlon had regarding the shutdown of the Springville clubhouse. Whether Defendant meant that he could not provide "details" because he was, from a distance of 200 feet, too far away from the shutdown, or whether he reasonably understood the question about the "details" of the clubhouse as requiring more information than he had in light of his vantage point, are both questions for the jury to resolve. Accordingly, the motion to dismiss Count 30 is denied.

## II.    Motion for Bill of Particulars

Scanlon moves for a bill of particulars regarding Counts 27 and 28, requesting that the Government identify the allegedly false testimony predicating the obstruction of justice charges set forth in Counts 27 and 28. (Dkt. 385 at 27-30). Count 27 alleges that, between July 15 and September 16, 2015, Scanlon corruptly obstructed, influenced, and impeded an official proceeding—the grand jury investigation—by testifying falsely regarding ten categories of information:

(i) his knowledge of the Kingsmen Motorcycle Club; (ii) his relationship with David Pirk; (iii) the amount of communication he had and maintained with David Pirk; (iv) his telephone contact with David Pirk on September 6, 2014; (v) his meeting with David Pirk on September 6, 2014, in Delevan, New York; (vi) the role of the Kingsmen Nomads; (vii) his knowledge of the shutdown of the Springville Chapter Kingsmen clubhouse on June 7, 2013; (viii) the assault of Victim B, a person known to the Grand Jury and robbery at the Springville Chapter Kingsmen clubhouse on June 7, 2013; (ix) the purpose and substance of his meeting with the Outlaws in Olean, New York, in the summer of 2014; and (x) his role in the Kingsmen Motorcycle Club.

(Dkt. 33 at 48).  Count 27 alleges a violation of 18 U.S.C. § 1512(c)(2).

Count 28 is similar to Count 27, except that: (1) Count 28 alleges a violation of 18 U.S.C. § 1503; (2) the alleged obstruction is with respect to "the due administration of justice in investigations being conducted by a Grand Jury and the Federal Bureau of Investigation;" and (3) Scanlon allegedly testified "falsely and evasively." (*Id.* at 49).

For the reasons set forth below, the Court reserves decision on Scanlon's motion for particularization of these counts and requests supplemental briefing as indicated below.

## A.    Legal Standard

With respect to Scanlon's request for a bill of particulars,

> Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.

*United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).  A bill of particulars amplifies the pleading (i.e. the indictment), and therefore, the Government will be "strictly limited to proving what it has set forth in it."  *United States v. Germain*, 33 F.

App'x 565, 566 (2d Cir. 2002) (quoting *United States v. Glaze*, 313 F.2d 757, 759 (2d Cir. 1963)).  As a result, a bill of particulars should not be substituted for a form of discovery—it "should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense." *United States v. Henry*, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994).  That said,

> [w]hile a bill of particulars is not intended, as such, as a means of learning the government's evidence and theories, if necessary to give the defendant enough information about the charge to prepare his defense, it will be required even if the effect is disclosure of evidence or of theories.  A district court judge, however, has the discretion to deny a bill of particulars if the information sought by defendant is provided in the indictment or in some acceptable alternate form.

*United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998) (internal quotation marks and citations omitted).  "The granting of a bill of particulars rests within the sound discretion of the district court." *United States v. Strawberry*, 892 F. Supp. 519, 526 (S.D.N.Y. 1995).

## B.    Arguments

Scanlon argues that he cannot prepare a defense against Counts 27 and 28 without particularization of the specific testimony alleged to be false.  (Dkt. 385 at 27). According to Scanlon, without such particularization, the burden may be shifted to him such that he "may be placed in the position of proving that various statements made by [him] are *true*." (*Id.*).  He elaborates:

> Absent identification of the specific statements alleged to be false and, relatedly, the questions (if any) to which the false statements were responding, the defense is unable to file a pre-trial motion to dismiss and, if the counts survive for trial, the defense may be put in the same untenable position as the defendants in *Bortnovsky*—forced to address and explain

> numerous statements *which may not all be false*. This is error, and the
> Government must particularize its obstruction counts.

(*Id.* at 28).  He further argues that a bill of particulars may allow him to file a motion to

dismiss these counts as multiplicitous, if warranted.  (*Id.* at 29).

> The Government opposes the request, contending:

> Count 27 specifies ten (10) ways in which the defendant testified falsely,
> and Count 28 specifies ten (10) ways in which the defendant testified
> falsely and evasively. The defendant has been provided all of his
> statements, pursuant to Rule 16, including his grand jury testimony, such
> that his claim he is unable to prepare to defend against those charges lacks
> merit. All the defendant needs to do is compare his answers and statements
> to the details provided in Count 1 of the indictment to prepare for trial.

(Dkt. 437 at 24-25).   It further contends that Scanlon's multiplicity argument is

premature, and that if Scanlon "is not entitled to dismissal, he is also not entitled to a bill

of particulars seeking evidentiary detail in an effort to support a motion to dismiss." (*Id.*

at 32).

## C.    Analysis

The Court finds that, for the most part, Scanlon has not met his burden to show

that a bill of particulars is warranted with respect to Counts 27 and 28.  The Indictment is

sufficiently specific regarding the information he seeks: in each count, the Indictment

lists ten topics about which Scanlon allegedly testified falsely and/or evasively.  (Dkt. 33

at 48-49).  These topics are not broad, undefined areas, but rather the areas are reasonably

specific and defined.

Scanlon relies on *Bortnovsky* in support of his request for a bill of particulars.  In

that case, the defendants were charged with mail fraud, conspiracy to defraud the United

States, and RICO violations, in connection with a "scheme to defraud the Federal Emergency Management Administration and the New York Property Insurance Underwriting Association through the submission of false and inflated insurance claims." 820 F.2d at 573. The Second Circuit remanded the case for a new trial and held that the district court abused its discretion in denying the defendants' motion for a bill of particulars identifying which of their insurance claims for burglary losses were fraudulent and which of the many invoices submitted to substantiate these claims were falsified. *Id.* at 573-74. The indictment in that case did not specify the dates of the staged burglaries or identify which of the some 4,000 documents were falsified; further, at trial, the Government introduced evidence of 12 burglaries, but only four of them were fabricated. *Id.* at 574. As a result, the defendants "were forced to explain the events surrounding eight actual burglaries and to confront numerous documents unrelated to the charges pending. In effect, the burden of proof impermissibly was shifted to appellants." *Id.* at 574-75.

Scanlon also relies on *United States v. Trie*, 21 F. Supp. 2d 7, 21 (D.D.C. 1998), in which that court ordered particularization of the false statements alleged in connection with counts charging the defendant with aiding and abetting the making of false statements to the Federal Election Commission. (Dkt. 509 at 14). The Government had provided "open file discovery" that "amount[ed] to making available for inspection at a central location approximately 1.9 million documents," which the *Trie* court found to be "no substitute for adequate specification of the crimes with which [the defendant] is

charged." *Id.* at 21 n.12. The court therefore rejected the Government's argument that its provision of discovery foreclosed the need for particularization, reasoning as follows:

> Not only does the government's position presume that the defendant knows what the government alleges that he did and with whom he dealt and therefore has all the information he needs, a premise inconsistent with the presumption of innocence, but it smacks of gamesmanship. A defendant faced with false statements charges should not have to waste precious pre-trial preparation time guessing which statements he has to defend against or which contributors may be witnesses against him at trial when the government knows precisely the statements on which it intends to rely and can easily provide the information

*Id.* at 21.

*Bortnovsky* and *Trie* are distinguishable from the instant case. In contrast to *Bortnovsky*, where the indictment did not specify the dates of the staged burglaries or identify the falsified documents, the Government has identified ten topics about which Scanlon allegedly testified falsely and/or evasively, including relevant dates, locations, and persons where applicable. (Dkt. 33 at 48-49). Thus, the relevant incidents are not "shrouded in mystery" as they were in *Bortnovsky*. 820 F.2d at 575. Further, as the Government represents, Scanlon "has been provided all of his statements, pursuant to Rule 16, including his grand jury testimony." (Dkt. 437 at 24-25). Unlike in *Bortnovsky*, in which the defendant was required to sift through 4,000 documents to determine which were false, or *Trie*, where discovery amounted to 1.9 million documents, Scanlon has not argued that the discovery provided thus far is too voluminous to review. In fact, the Court has reviewed Scanlon's grand jury testimony from July 15, 2015, and September 16, 2015, and in total, it consists of less than 150 pages of testimony. In other words, this is not a voluminous amount of testimony but rather it is limited, and even further limited

by virtue of the ten defined areas of inquiry about which Scanlon allegedly testified falsely and/or evasively. *See United States v. Kaplan*, No. 02 CR. 883(DAB), 2003 WL 22880914, at *16 (S.D.N.Y. Dec. 5, 2003) (distinguishing *Trie* on the grounds that it involved much more voluminous discovery and declining to order bill of particulars identifying why certain statements were alleged to be false). *But see United States v. Lino*, No. 00 CR. 632(WHP), 2001 WL 8356, at *6 (S.D.N.Y. Jan. 2, 2001) (granting request to particularize false statements, based on *Bortnovsky* and *Trie*).

Although it may be helpful for the Government to identify by page and line each and every statement made by Scanlon to the grand jury that serves as the basis for the charges in Counts 28 and 29, it is not necessary for Scanlon to prepare a defense. Indeed, because these counts constitute obstruction of justice counts as opposed to perjury charges, even though the alleged obstruction is based on purportedly false statements, the statements do not need to be set out specifically in the indictment. *See United States v. Upton*, 856 F. Supp. 727, 753-54 (E.D.N.Y. 1994) (denying requested particularization for obstruction of justice count based upon alleged false testimony before federal agency, where the indictment set forth the description of the alleged false testimony (i.e. testifying falsely regarding knowledge of conspiracy to falsify maintenance records) and defendants were in possession of transcripts containing alleged false testimony); *United States v. Schwimmer*, 649 F. Supp. 544, 547 (E.D.N.Y. 1986) (denying motion to dismiss obstruction of justice count and, with one exception, request for further particularization). In addition, the Court agrees with the Government that any concerns about multiplicity

are premature and would be more appropriately dealt with at the time of trial.  (*See* Dkt. 437 at 31-32).

However, although not specifically addressed by Scanlon with his request for particularization, the Court is uncertain as to whether the basis for the alleged false statements set forth in Counts 28 and 29 includes statements Scanlon allegedly made outside the context of his grand jury testimony.  The counts refer to testimony which would suggest that, in fact, the alleged false statements consisted solely of statements made under oath by Scanlon before the grand jury.  However, as discussed above in the context of Scanlon's motion to dismiss, Count 28 at least also refers to conduct that influenced, obstructed, and impeded not only a grand jury investigation, but also an FBI investigation, and in its response to Scanlon's motion for a bill of particulars, the Government cites to the documentation supplied to Scanlon, including the "interview and arrest FBI 302s pertaining to defendant Thomas Scanlon. . . ."  (Dkt. 437 at 20-21). Thus, it is not clear whether the Government will seek to rely on statements allegedly made by Scanlon to the FBI as the basis for the charges in Counts 27 and 28.  If that is the case, a bill of particulars may be appropriate.  *See United States v. Subeh*, No. 04-CR-6077T, 2006 WL 219968 (W.D.N.Y. Jan. 24, 2006) (limited particularization required on two counts charging the defendant with making false statements to a government agent, where there was no indication that the allegedly false statements were made in response to a specific inquiry by the agents and there was no transcript of the interview), *report and recommendation adopted*, 2006 WL 1875407 (W.D.N.Y. July 5, 2006).

Again, Scanlon did not address this issue with any specificity in his motion for a bill of particulars, and the Court is not able to resolve the issue based on the record before it. As a result, the Court reserves decision on the motion for a bill of particulars, and directs the Government to submit supplemental briefing that addresses whether it is relying on statements made by Scanlon to the FBI to support the charges in Counts 27 and 28; if so, the Government should also identify the documentation that reflects any such statements (and provide a copy to the Court) and set forth the reasons why the Government believes that Scanlon has enough information to prepare his defense without further particularization. The Government's supplemental briefing is due within 14 days of this Decision and Order. Scanlon may respond to the Government's submission within 14 days thereafter, at which point the Court will take the matter under advisement.

## CONCLUSION

For the foregoing reasons, Scanlon's motion to dismiss Counts 28, 29, and 30, set forth at Docket 385, is denied. The Court reserves decision on the motion for a bill of particulars with respect to Counts 27 and 28, and the parties are directed to submit supplemental briefing consistent with this Decision and Order in accordance with the schedule set forth herein.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: July 24, 2017
Rochester, New York

- 24 -